1
2
3
4
5
6
7
8                  IN THE UNITED STATES DISTRICT COURT
9               FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11  TIM QUIGLEY, and QAZ MEDIA, LLC          No. C 10-03569 CRB
12              Plaintiffs,                  **ORDER: (1) GRANTING IN PART
                                             AND DENYING IN PART MOTION
13       v.                                  TO DISMISS; (2) DENYING
                                             ALTERNATIVE MOTION TO
14  GUVERA IP PTY LTD, and GUVERA USA        TRANSFER; (3) DENYING MOTION
    INC.                                     FOR PRELIMINARY INJUNCTION;
15                                           AND (4) DENYING MOTION TO
              Defendants.                    STRIKE**
16  _____/
17
18  **I.      BACKGROUND**
19          This is a lawsuit involving online music services.  Plaintiffs Tim Quigley and Qaz
20  Media LLP, associated with a music service named "Groovera," brought suit against
21  Defendants Guvera IP and Guvera USA, associated with a music service named "Guvera,"
22  for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15
23  U.S.C. § 1125(A), California common law passing off and unfair competition, and unfair
24  competition under California Business and Professional Code § 17200 et seq.  FAC (Doc.
25  13) at 8-10.  Now pending are Defendants' Motion to Dismiss and, Alternatively, to
26  Transfer, as well as Plaintiffs' Motion for Preliminary Injunction and Motion to Strike.
27          Quigley and Qaz, an entity organized under Washington law, own and operate
28  Groovera, a free online music broadcasting service.  Id. at 1-2.  Groovera is a "multi-channel

web radio station specializing only in chill-out music." Id. at 3.  Groovera is funded by personal and listener contributions, without corporate funding or sponsorship. Id.  Quigley created the name Groovera as a "combination of the words *groove* and the Latin word *vera*, meaning 'true' and 'pure.'" Id. at 3.  Quigley purchased the groovera.com domain name on July 25, 2005. Id.  Federal trademark registration for use of the Groovera mark issued September 14, 2010 for use in connection with online distribution of music. Id.  Plaintiffs also claim common law trademark rights in Groovera. Id. at 4.  The Groovera website prominently features the Groovera mark and the tagline "Share the Love." Id.

Plaintiffs allege that Defendants Guvera USA and Guvera IP infringe the Groovera mark through the operation of Guvera.com. Guvera is an online music service founded in Australia in August, 2008.  Mot. to Dismiss (MTD) (Doc. 18) at 3. Guvera offers free music downloads to consumers by contracting with advertisers who pay to sponsor music channels "congruent with the advertisers' likely customer base." Id. at 1.  Fees from advertisers are used to pay licensing fees for the music. Id.  Guvera currently offers over three million songs, and is adding 100,000 songs per week, in a wide range of genres.  Opp. to Mot. for Preliminary Injunction (MPI) (Doc. 31) at 7.  Guvera asserts that it has "virtually no competitors" because other companies who have attempted to legally distribute free downloadable music have not been economically viable. Id.

Guvera's founder first used the mark in December 2007 as part of a business school presentation. Id. at 3.  The name Guvera and its red star logo "is intended to loosely call to mind the notorious revolutionary Che Guevara" to "highlight the 'revolutionary' nature" of Guvera's online music service.  Opp. to MPI (Doc. 31) at 1.  Guvera USA is a New York-based, Delaware-incorporated subsidiary of Guvera Ltd., an Australian entity.  Guvera IP is an Australian entity and subsidiary of Guvera Ltd. that licenses Guvera's intellectual property.  MTD (Doc. 18) at 1.  Guvera Ltd., the parent company, has raised $20 million from investors and negotiated contracts with large recording companies, music licensing bodies, and advertisers.  Opp. to MPI (Doc. 31) at 1.  Guvera has obtained trademark protection in the United States and several other countries. Id

1    For the reasons explained below, the Court GRANTS the Motion to Dismiss only as

2  to lack of personal jurisdiction over Guvera IP, the Australian licensing entity with no

3  cognizable contacts with California.  The Court DENIES the Motion to Dismiss as to

4  personal jurisdiction over Guvera USA, whose operation of Guvera.com is interactive,

5  commercial, and adequately aimed at California, and it DENIES the Motion to Dismiss for

6  failure to state a claim, as California law allows for out-of-state-corporate entities to sustain

7  claims upon registration in California, even if unregistered upon commencement of the suit.

8  The Court DENIES the alternative Motion to Transfer, as the burden on the Defendant is not

9  so great as to overwhelm the Plaintiffs' choice of forum.  The Court DENIES the Motion for

10  Preliminary Injunction, as Plaintiffs have not shown a likelihood of success or that they have

11  raised serious questions on the merits.  And the Court DENIES the Motion to Strike, as

12  Plaintiffs have failed to demonstrate that the Cohen Declaration violates the rules of

13  evidence.

14  **II.    ANALYSIS**

15      **A.    Motion to Dismiss**

16    Defendants move to dismiss the case based on (1) lack of personal jurisdiction over

17  Guvera USA, (2) lack of personal jurisdiction over Guvera IP, and (3) failure to state a claim.

18          **1.    Personal Jurisdiction Over Guvera USA**

19    The burden to demonstrate personal jurisdiction over a defendant rests with the

20  plaintiff.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

21  Personal jurisdiction in federal court must comport with Rule 4(k) of the Federal Rules of

22  Civil Procedure, as well as with federal due process.  See id. at 800-01.  Under Rule

23  4(k)(1)(A), the long-arm statute of the state in which the district court sits must be applied

24  when determining whether the court has jurisdiction over out-of-state defendants.  The

25  California long-arm statute is coextensive with federal due process, so in this Court the

26  personal jurisdiction analysis consists solely of federal due process analysis. See

27  Schwarzenegger, 374 F.3d at 800-01.

28

United States District Court
For the Northern District of California

The overarching framework for personal jurisdiction asks whether the defendant has minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Plaintiffs allege that this Court has specific jurisdiction over Defendants. Opp. to MTD (Doc. 36) at 4.[1]

The Ninth Circuit employees a three-part test to assess specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802. The test applied in the first prong depends on the nature of the claim at issue; claims in tort should be assessed under the purposeful direction analysis while claims in contract should be assessed under the purposeful availment analysis. Id. Unfair competition claims are claims in tort, and trademark claims may also be fairly characterized as tortious. Cf. Brayton Purcell LLP v. Recordon & Recordon, 361 F. Supp. 2d 1135, 1140 (N.D. Cal. 2005). Therefore, the purposeful direction test applies here.

### a. **Purposeful Direction**

Purposeful direction is assessed under the "Calder effects" test, another three-part test, which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803. The Calder test requires "something more" than mere foreseeability; the effects in the third prong must be expressly aimed at the forum state. Pebble Beach Co. v. Caddy, 453 F. 3d 1151, 1156 (9th Cir. 2006). However, the "'express aiming'

---

[1] Plaintiffs do not allege that this Court has general jurisdiction over Defendants.

4

United States District Court
For the Northern District of California

1  analysis depends, to a significant degree, on the specific type of tort at issue."

2  Schwarzenegger, 374 F.3d at 807.

3              **i.      Calder Act and Aiming Requirements on the Internet**

4          The kinds of acts, and "aiming," that satisfy the Calder effects test for websites

5  are assessed under the Cybersell framework.  Under Cybersell, operation of a passive

6  website is not adequate to establish personal jurisdiction over a defendant, whereas

7  operation of an interactive, commercial website is often sufficient.  Cybersell, Inc. v.

8  Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997).  If a website falls somewhere

9  between passive and interactive, "the likelihood that personal jurisdiction can be

10  constitutionally exercised is directly proportionate to the nature and quality of

11  commercial activity that an entity conducts over the internet." Id. at 419.  Courts have

12  found that "doing nothing other than registering a domain name and posting an

13  essentially passive website" is insufficient for personal jurisdiction.  See Pebble

14  Beach, 453 F. 3d at 1156-57; Cybersell, 130 F.3d at 418-20.  However, where a

15  website is used to conduct business or raise money, courts have found that the

16  exercise of personal jurisdiction is appropriate.  See Stomp, Inc. v. NeatO, LLC, 61 F.

17  Supp. 1074, 1078 (C.D. Cal. 1999) (website selling patent-infringing goods);

18  Panavision Int'l v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (scheme to induce

19  plaintiff to pay defendant for rights to the domain name).  This Court recently found

20  that a website that required users to enter their contact information to gain access to

21  information on the website, and then sold that contact information entered by users to

22  a third party, was interactive and commercial.  See Am. Auto. Ass'n, Inc.v. Darba

23  Enters., Inc., No. C. 09-00510, 2009 WL 1066506, at *4 (N.D. Cal., Apr. 21, 2009).

24  The Court explained that the defendant "profited when California users entered their

25  contact information in his website, even though he did not sell anything to them

26  directly" and therefore that the defendant's contacts with California were sufficient for

27  the exercise of personal jurisdiction.  Id. at *4-*7.

28

1    Guvera USA's website is interactive, commercial, and targeted at California

2    residents.  It requires users to register in order to download free songs, Guvera's key

3    feature.  See MTD (Doc. 18) at 5 (free music downloads is the "principal idea behind

4    Guvera USA's business model").  Users enter personal information, including their

5    zip code, which allows Guvera USA to match consumer profiles with the profiles

6    Guvera USA's advertisers have chosen to target.  See id. at 1; Opp. to MPI (Doc. 31)

7    at 11. This interaction is crucial to Guvera USA– consumers are able to obtain free

8    music only in exchange for information about themselves, which is then matched with

9    advertiser preferences, which in turn allows Guvera USA to collect fees from

10   advertisers with which to pay licensing fees for the music and earn revenue.  See Opp.

11   to MTD (Doc 36) at 8.  Thus, although Guvera USA does not directly sell products

12   through its website, it generates revenue through consumer interaction on the website.

13   The website cannot fairly be described as passive in the Cybersell framework; it is

14   closer to the websites in Panavision and AAA –  not commercial in a classic sense but

15   nonetheless intended to earn revenue.  Compare Cybersell, 130 F.3d at 419-20

16   (passive website with information about a local business) and Pebble Beach, 453 F. 3d

17   at 1156 (passive website with using defendant's trademarked name) with Panavision,

18   141 F.3d at 1321 (scheme to register domain name of defendant's trademark to obtain

19   payment from defendant) and AAA, 2009 WL 1066506, at *4 (website using

20   defendant's trademarked acronym collecting information to sell to third parties).

21   In addition to being aware of California users of Guvera.com, Guvera USA

22   established a California-specific privacy policy in order to comply with California

23   law.  Opp. to MTD (Doc. 36) at 9.  Guvera USA thus expressly sought consumers in

24   California.  Guvera USA's description of the channel system on its website, using a

25   girl from California as an example to explain the payment model, further supports the

26   finding that Guvera USA expressly aims Guvera.com's interactive web services at

27   California residents.  See id.  Guvera.com is not a website meant to serve a small

28   community, as in Cybersell, or to serve a limited audience seeking to travel to a small

1  town overseas, as in <u>Pebble Beach</u>.  Instead, the Guvera model is premised on

2  widespread use throughout the United States, explicitly including California.  <u>See</u>

3  Opp. to MPI (Doc. 31) at 9 (describing Guvera's active national and international

4  publicity campaign).  This intentional targeting of consumers in California satisfies

5  the "something more" required by <u>Calder</u> because it is not merely foreseeable that

6  Guvera.com is being used by consumers in California, and allegedly causing

7  confusion with Plaintiffs' mark, but rather an intended consequence of Guvera USA's

8  strategy.

9                              **ii.    Calder Harm in the Forum State**

10        The third prong of the <u>Calder</u> test, requiring that defendants know harm will be

11  suffered in the forum state, can be satisfied where the defendant knew the plaintiff

12  resides in the forum state.  <u>See</u> <u>Sinatra v. Nat'l Enquirer, Inc.</u>, 854 F.2d 1191 (9th Cir.

13  1988).  Guvera USA concedes that Groovera's U.S. trademark application precedes

14  Guvera's, and therefore that Guvera USA was on constructive notice of the Groovera

15  mark.  Opp. to MPI (Doc. 31) at 12.  Groovera's marks are registered to Plaintiffs in

16  California.  <u>See</u> FAC (Doc. 13) Exs. A, C.  Because Guvera was on constructive

17  notice of the Groovera mark, which is registered to California entities, Guvera USA's

18  use of the Guvera mark allegedly infringes the Groovera mark, and Guvera USA's

19  website is directed at California residents (among others), Guvera USA

20  (constructively) knew that harm would be suffered in California.

21                              **b.    Forum-Related Activities**

22        The second prong of the specific jurisdiction test, that "the claim arises out of

23  or relates to the defendant's forum-related activities," requires the defendant's forum-

24  related activities to be the but-for cause of the plaintiff's alleged injury.  <u>See</u>

25  <u>Panavision</u>, 141 F.3d at 1322.  Groovera claims that it has suffered a loss in

26  consumers and in goodwill due to confusion with Guvera USA's website's use of the

27  allegedly similar mark.  This alleged harm arises out of the purposefully directed

28  contacts to California residents due to the interactive nature of Guvera USA's website.

1   The harm thus arises out of the contacts and is the but-for cause of the alleged harm.

2   Plaintiffs therefore have met their burden to establish minimum contacts adequate for

3   specific personal jurisdiction over Guvera USA.

4                         c.      **Reasonableness**

5            When a plaintiff meets his burden to establish minimum contacts arising out of

6   a defendant's activities in the forum state, the burden shifts to the defendant to prove

7   that the exercise of personal jurisdiction is not reasonable in light of traditional

8   notions of fair play and substantial justice.  Schwarzenegger, 374 F.3d at 802 (citing

9   Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)). Factors to be

10  considered include: "(1) the extent of a defendant's purposeful interjection; (2) the

11  burden on the defendant in defending in the forum; (3) the extent of conflict with the

12  sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the

13  dispute; (5) the most efficient judicial resolution of the controversy; (6) the

14  importance of the forum to the plaintiff's interest in convenient and effective relief;

15  and (7) the existence of an alternative forum."  Panavision, 141 F.3d at 1323 (citing

16  Burger King, 471 U.S. at 476-77).  The factors are to be weighed together, and none

17  are dispositive.  Id.  Further, the defendant must demonstrate that the "inconvenience

18  is so great as to constitute a deprivation of due process." Panavision, 141 F.3d at

19  1323.

20          Guvera USA argues that the exercise of specific jurisdiction over it would be

21  unreasonable, but does not establish that a violation of due process would result from the

22  Court's exercise of jurisdiction.  MTD (Doc. 18) at 16.  Guvera USA asserts that its

23  purposeful interjection in California is limited.  Id.  However, the nature of Guvera USA's

24  contacts with California is far more extensive than it concedes.  See discussion above.  This

25  factor is neutral.

26          Guvera USA's argument that it would be burdened by defending suit in California

27  might well be true, given that it is based in New York and incorporated in Delaware.

28  However, as discussed infra, a plaintiff's choice of forum is given great weight.  Defendants

also argue that the Southern District of New York would be a preferable forum; however the burden on Plaintiffs in that forum would likely be substantial.  See Opp. to MTD at 22. Guvera USA has not met its burden to show that the exercise of personal jurisdiction here would be unreasonable, therefore there is specific personal jurisdiction over Guvera USA.

The Motion to Dismiss for Lack of Personal Jurisdiction over Guvera USA is DENIED.

### 2.    Personal Jurisdiction Over Guvera IP

Unlike Guvera USA, Guvera IP does not have adequate minimum contacts with California to be subject to personal jurisdiction here.  Guvera IP's sole act of licensing the Guvera mark to Guvera USA for use in the United States, see MTD (Doc. 18) at 2, does not constitute purposeful direction under the Calder effects test.  Licensors are generally not subject to personal jurisdiction where their sole contact with the forum state is a license.  See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed. Cir. 1998) (patent licenses and cease-and desist letters insufficient to establish minimum contacts); cf. Dex Prods., Inc. v. Houghtenling, No. C. 05-05126, 2006 WL 1751903, at *4 (N.D. Cal. Jun. 23, 2006) (patent owner sending cease and desist letters insufficient for personal jurisdiction). Personal jurisdiction requires more than a license or ownership of intellectual property.  See, e.g., Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997) (extensive business contacts with the forum state in addition to licenses satisfied due process).  Because Guvera IP's contacts with California do not satisfy the first prong of the specific jurisdiction test, the Court finds that no additional analysis on this point is necessary.

The Motion to Dismiss for Lack of Personal Jurisdiction over Guvera IP is GRANTED.

### 3.    Failure to State a Claim

Defendant also moves to dismiss Plaintiffs' state law claims under Rule 12(b)(6) because Qaz, a Washington limited liability company, was not registered to do business in California at the time the suit was filed.  MTD (Doc. 18) at 21. Qaz has since registered. Opp. to MTD (Doc. 36) at 25; Quigley Decl. (Doc. 16) ¶ 16.  California law requires out-of-

**United States District Court**
For the Northern District of California

9

1    state limited liability companies conducting intrastate business to be registered with the state

2    in order to "maintain any action, suit, or proceeding in any court of this state."  Cal. Corps.

3    Code § 17456(a).  However, California courts consistently treat this and similar corporate

4    registration provisions as governing a company's capacity to sue, not its standing, and

5    therefore do not prevent an unregistered out of state entity from commencing a suit and

6    curing the deficiency while the suit is underway.  See, e.g., Motohouse Int'l, LLC v. PPG

7    Indus., Civ. No. 09-1265, 2010 WL 476652, at *1 (S.D. Cal. Feb. 4, 2010) (registration

8    under § 17456 after filing motion to dismiss cured capacity to sue, making dismissal

9    inappropriate); see also United Med. Mgmt. Ltd. v. Gatto, 49 Cal. App. 4th 1732, 1739-40

10   (Cal. Ct. App. 1997) (corporation who fails to qualify under § 2203 [provision analogous to §

11   17456(a) governing out-of-state corporations] may commence an action, but such action may

12   be abated until the company is qualified with Secretary of State and thus permitted to

13   "maintain" suit); EWorld Partners, LLC v. E-Business Solutions, LLC, 2004 WL 4964212

14   (Cal. Superior) (§ 17456 contains identical language to § 2203; therefore law under §2203

15   allowing actions to be commenced before properly qualifying with the state applies to §

16   17456 cases); cf. CLD Constr., Inc. v. City of San Ramon, 120 Cal. App. 4th 1141, 1151 (Cal.

17   Ct. App. 2004) ("a failure to comply with statutory requirements governing corporations

18   does not implicate the court's subject matter jurisdiction or prevent the corporation from

19   commencing an action; non-complying corporations have been permitted to revive their

20   corporate powers or correct the defects prior to trial").

21          Under California law, which controls, Qaz's state law claims may now be maintained

22   because Qaz has properly qualified with the Secretary of State.  The Motion to Dismiss for

23   failure to state a claim is therefore DENIED.

24                          **3.      Conclusion as to Motion to Dismiss**

25          Accordingly, the Motion to Dismiss is GRANTED as to lack of personal jurisdiction

26   over Guvera USA, DENIED as to lack of personal jurisdiction over Guvera IP, and DENIED

27   as to failure to state a claim.

28   //

                                              10

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Motion to Transfer**

In the alternative to dismissal, Defendants move to transfer the case to the Southern District of New York.  However, Defendants fail to demonstrate that the burden on Defendants, or any other interests, overwhelm the Plaintiffs' choice of forum.  28 U.S.C. § 1404(a) permits transfer of venue "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it may have been brought."  Id. (2006).  Relevant considerations also include judicial economy, relative ease of access to proof, and availability of compulsory process.  E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994).  Generally, a plaintiff's choice of forum is entitled to deference in a 1404(a) motion.  Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1156-57 (S.D. Cal. 2005).  However, where a plaintiff has brought suit in a forum that is not his or her residence, deference to the plaintiff's choice of forum is diminished.  Id. at 1156-58.

Here, Defendants allege that Plaintiffs are not residents of California and thus are not entitled to deference in their choice of forum.  MTD (Doc. 18) at 18.  However, Quigley submitted evidence supporting his claim that he is a resident of California, and Qaz has now been registered to conduct business in California.  Opp. to MTD (Doc. 36) at 21, 25; Quigley Decl. (Doc. 16) ¶ 2.  Plaintiffs therefore are entitled to customary deference to their choice of forum.

Defendants' other arguments for transfer are unavailing.  There is nothing particularly burdensome about a New York corporation whose contacts extend into California conducting a lawsuit in California.  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (court should not transfer an action where transfer would merely shift the burden of inconvenience from the defendant to the plaintiff).  Any of the benefits that would be gained by transfer to New York in terms of access to Defendants' witnesses and evidence would largely be offset by the accompanying increase in costs in terms of access to Plaintiffs' witnesses and evidence.  Judicial economy and the interest of justice also do not tip the balance in favor of transfer.

The Motion to Transfer is DENIED.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    **Motion for Preliminary Injunction**

Plaintiffs move for a preliminary injunction restraining Defendants from using their allegedly confusingly similar trade name.  MPI (Doc. 15) at 1.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., --- U.S. ----, 129 S.Ct. 365, 376 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Id. at 374.  "In Winter, the Supreme Court disagreed with one aspect of [the Ninth Circuit's] approach to preliminary injunctions."  Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1049 (9th Cir. 2010).  Specifically, Winter rejected the Ninth Circuit's approach under which, in some circumstances, a party seeking a preliminary injunction had only to show a "possibility" of irreparable harm.  Winter makes clear that the party seeking a preliminary injunction must show that irreparable harm is "likely."  Id. at 1050.

Notwithstanding Winter, the Ninth Circuit has reaffirmed that "the 'serious questions' approach survives Winter when applied as part of the four-element Winter test."  Alliance for the Wild Rockies, 622 F.3d at 1052.  "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met."  Id.

1.    **Likelihood of Success on the Merits/"Serious Questions"**

Success on a trademark infringement claim requires (1) a valid trademark and (2) likelihood of confusion.  See Brookfield Commc'ns, Inc. v. West Coast Enm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999).  Because Plaintiffs have a valid trademark, see MPI (Doc. 15) at 5, the focus of the Court's inquiry is on the likelihood of confusion.

Courts analyzing likelihood of confusion look at eight factors: (1) the strength of the mark; (2) the similarity of the marks; (3) proximity of the goods/services; (4) similarity in the marketing channels used; (5) the type of goods/services and the degree of care likely to be

**United States District Court**
For the Northern District of California

1  exercised by purchasers; (6) evidence of actual confusion; (7) defendant's intent in selecting

2  its mark; and (8) likelihood of expansion into other markets.  See AMF Inc. v. Sleekcraft

3  Boats, 599 F.2d 341, 348 (9th Cir. 1979).

### a.   Strength of the Mark

5      The first Sleekcraft factor, strength of the mark, is determined with a two-part test.

6  The first part is conceptual strength.  See J. Thomas McCarthy, McCarthy on Trademarks at

7  11:83.  The second part of the strength analysis is commercial strength, or the marketplace

8  recognition value of the mark.  Id.

9      Conceptual strength is judged on a sliding scale from (1) inherently distinctive marks

10  (arbitrary and fanciful), meriting strong protection, to (2) suggestive marks, meriting less

11  protection, to (3) descriptive marks, meriting protection only when secondary meaning has

12  been established, to (4) generic marks which do not merit protection.  Sleekcraft, 599 F.2d at

13  349.  A fanciful mark is a "coined word or phrase, such as Kodak, invented solely to function

14  as a trademark."  Dreamwerks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, at 1130 n.7

15  (9th Cir. 1998).  Groovera is a combination of two words, "groove" and "vera."  MPI (Doc.

16  15) at 9.  The use of the word "groove" is common in music, especially in reference to the

17  "chill-out" music available on the Groovera site.  See Opp. to MPI (Doc. 31) at 5 ("groove"

18  is part of the name of numerous online music channels and sites as well as musical artists,

19  albums, and songs).  Unlike a classic fanciful mark such as Kodak, which bears no logical

20  relationship to the underlying product, Groovera is suggestive of the "groovy" ambient music

21  available on Groovera.  Plaintiff has thus not shown that the mark is conceptually strong.

22      Commercial strength or marketplace recognition is assessed by looking at a range of

23  indicators, such as whether "similar marks permeate the marketplace" suggesting weak

24  recognition, Miss World (U.K.) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1449

25  (9th Cir. 1988), and the number of times the mark has been displayed in the marketplace,

26  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207-08 (9th Cir. 2000) (display of a

27  logo to internet users billions of times was "compelling evidence of the strength" of the

28  logo).  As described above, use of the word "groove" is common in the online music

marketplace, weighing against commercial strength.  However, the mark has been displayed

to internet users "at minimum tens of millions, and possibly billions, of times" during the

five years of Groovera's operation, suggesting commercial strength.  MPI Reply (Doc. 46) at

2.  On balance, Plaintiffs show some level of recognition in the market place.

On balance, the mark's conceptual and commercial strength do not favor Plaintiffs or

Defendants, and thus the first factor is neutral.

### b.  <u>Similarity of the Marks</u>

The second <u>Sleekcraft</u> factor calls for comparison of the marks based on sight, sound,

and meaning.  <u>Official Airline Guides, Inc. v. Goss</u>, 6 F.3d 1385, 1392 (9th Cir. 1993).

For sight, the consistent use of a logo or other distinctive characteristics may be

considered, even where the words themselves appear similar.  <u>See</u> <u>One Indus., LLC v. Jim</u>

<u>O'Neal Distrib., Inc.</u>, 578 F.3d 1154, 1164 (9th Cir. 2009).  The Groovera mark appears on

groovera.com in lower case, half in blue, half in white, with the tagline "share the love."

Opp. to MPI (Doc. 31) at 9.  The Guvera mark appears in uppercase with a red star in a red

banner on guvera.com. <u>Id</u>. at 10.  Thus, on the websites, the marks are distinctive.  However,

the marks do not always appear with their respective distinctive fonts, logos, and taglines

when they are outside the websites.  MPI Reply (Doc. 46) at 3.  The words alone are similar

in sight, although the "oo" and "u" reduce visual similarity.

The marks sound similar, with just the "r" in Groovera distinguishing it from Guvera.

This difference is not significant, however, as evidenced by the fact that Plaintiffs registered

at least twenty similar sounding domain names,[2] including "gruvera.com,"

"grovera.com,"and  "groovara.com,"  but only selected one that does not begin with "gr"

("goovara.com").  MPI (Doc. 15) at 3 n.1; Quigley Decl. (Doc. 16) ¶ 4.  In contrast,  Guvera

registered "goovera.com" which is phonetically identical to Guvera.  Opp. to MPI (Doc. 31)

at 10.

---

[2]Both Plaintiffs and Defendants undertook the common practice of registering similar-sounding domain names that redirect users to their respective websites.  <u>See</u> MPI (Doc. 15) at 3 n.1; Opp. to MPI (Doc. 31) at 10. Defendants explain that companies often register domain names that sound like the name of the website but are spelled differently.  Opp. to MPI (Doc. 31) at 10.

1   The meaning of the words is less similar.  Groovera plainly connotes "groove" or

2   "groovy" or, phonetically "groove era," if not the combination of "groove" and "vera"

3   chosen by Quigley.  <u>See</u> FAC (Doc. 13) at 3.  In contrast, Guvera's meaning is less readily

4   ascertainable.  Arguably, when paired with a red star, it effectively connotes Che Guevara

5   and a sense of revolution, as intended.  <u>See</u> Opp. to MPI (Doc. 31) at 1-2.  The respective

6   meanings of the marks are not particularly similar.

7   Overall, the marks are somewhat similar, favoring Plaintiffs, but only slightly.

8   **c.      Proximity of the Services**

9   This factor examines whether the public "will mistakenly assume there is an

10  association between the producers of the related goods, though no such association exists."

11  <u>Sleekcraft</u>, 599 F.2d at 350.  "When goods are related or complementary, the danger of

12  confusion is heightened."  <u>M2 Software, Inc. v. Madacy Entm't</u>, 421 F.3d 1073, 1081-82 (9th

13  Cir. 2005).  However, even when closely related, if the goods differ, this factor will tip only

14  slightly in favor of plaintiffs.  <u>See id.</u> at 1082 (software for business management in music

15  industry and music distribution closely related to recording companies, but since the music

16  delivered was very different–acid jazz versus sport-related music–the proximity of goods

17  factor weighed only slightly in favor of plaintiffs).

18  Here, the services share some similarities but are readily distinguishable.  Both

19  services offer free access to music online, but Defendants' focus is on free music <u>downloads</u>,

20  which are not available from Groovera.  <u>See</u> Opp. to MPI at 7.  This makes Guvera more like

21  a free online music store, whereas Groovera is more like a free, online radio station.  <u>See id.</u>

22  Further, Guvera covers a broad musical selection, whereas Groovera's selection is tailored to

23  "chill-out" music.  <u>See id.</u>  The differences between the services tip this factor slightly

24  towards Plaintiffs.  <u>See</u> <u>M2 Software</u>, 421 F.3d at 1082.

25  **d.      Marketing Channels**

26  Both services advertise online using Twitter, Facebook, MySpace, and publicity from

27  blogs.  MPI Reply (Doc. 46) at 6.  Guvera additionally uses traditional commercial

28  advertising and is not available via iTunes, whereas Groovera is accessible on iTunes.  Opp.

to MPI (Doc. 31) at 9.  While parties use internet marketing in somewhat different manners, there is significant overlap, and so this factor tips towards Plaintiffs.

### e.       Type of Services and Degree of Care

If a typical consumer exercises a high degree of care in purchasing the kind of good or service at issue, this weighs against likelihood of confusion.  Sleekcraft, 599 F.2d at 353. Expensive goods or buyer expertise often weigh against confusion.  Id.  Here, both services are free, which typically suggests a low degree of care is required, making confusion more likely.  However, Guvera imposes a higher degree of care on consumers by requiring users to register and provide personal information to obtain free downloads, which is different than Groovera and other similar online music services.  See Opp. to MPI (Doc. 31) at 11.  Thus this factor tips toward Defendants.

### f.       Actual Confusion

Evidence of actual confusion is persuasive proof that future confusion is likely, but a lack of actual evidence is not dispositive.  Sleekcraft, 599 F.2d at 352.  Where no evidence of actual confusion is produced and does not appear to be readily available, this factor is not weighed heavily.  Id. at 353.  Plaintiffs have not submitted evidence of actual confusion. MPI (Doc. 15) at 13.  This factor thus should not be weighed heavily and is neutral.

### g.       Intent in Adoption of the Mark

Knowing adoption of a similar mark suggests likelihood of confusion whereas good faith adoption of a similar mark weighs against likelihood of confusion.  Sleekcraft, 599 F.2d at 354.  Here Guvera concedes constructive knowledge of the Groovera mark, but claims to have adopted the mark in good faith in Australia, prior both to actual knowledge of Groovera and to undertaking a global trademark search.  Opp. to MPI (Doc. 31) at 11-12.  Plaintiff asserts that Guvera's use of the tag line "share the love" (a tag line consistently used by Groovera) indicates bad faith, but Guvera's prompt cessation of use of the term undercuts this allegation and instead suggests an inadvertent use of a relatively common phrase.  MPI (Doc. 15) at 7; Opp. to MPI (Doc. 31) at 12.  This factor weighs slightly in favor of Defendants.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### h.    Likelihood of Expansion

A "strong possibility that either party may expand his business to compete with the other will weigh in favor of . . . infring[ement]." Sleekcraft, 599 F.2d at 354.  However, when the goods or services already compete, this factor is not very significant.  See Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 963 (2d Cir. 1996).  Here, parties can fairly be considered in competition as to free "chill-out" or electronica music to some degree, although the products differ to the extent that Guvera makes songs available for free download.  In this sense, Guvera will not likely further expand into Groovera's market and the services already compete.  On the other hand, it appears unlikely that Groovera will expand into Guvera's market, especially as Guvera intends to expand its offering of media available for free download.  See Opp. to MPI (Doc. 31) at 7.  This factor therefore is not very significant, but favors Defendants.

### i.    Conclusion as to Likelihood of Success/Serious Questions

Overall, three factors favor Defendants (one of which is not very significant), three favor Plaintiffs (two only slightly), and two are neutral.  Plaintiffs thus have not established that they are likely to succeed on the merits, nor have they met the lesser standard of having raised serious questions as to the likelihood of confusion.

### 2.    Balance of the Hardships

Notwithstanding Plaintiffs' failure to raise very "serious questions going to the merits," the Ninth Circuit uses a sliding scale test in which a balance of hardships that tips sharply toward the Plaintiff can support issuance of an injunction, provided the other Winter elements have been met.  See Alliance for the Wild Rockies, 622 F.3d at 1052.  Here the balance of the hardships is at best even.  Plaintiff argues that "[i]f the Court allows Guvera to use its confusingly similar mark . . . Groovera will be irreparably harmed by loss of listeners and goodwill," while "Guvera just began operations in the U.S."  MPI (Doc. 15) at 15.  However, Plaintiffs fail to account for the significant harm that would result to Guvera in the event of an injunction.  First, Guvera is the name of Defendants' company, not only its website, and its 130,000 subscribers (60,000 in the United States) know it by that name.

**United States District Court**
For the Northern District of California

See Opp. to MPI (Doc. 31) at 19.[3]  Second, Guvera has invested over $20 million in its business in the last two years, $2 million of which have gone to advertising and promotion, all for the name Guvera.  Id. at 20.  This money would be lost in the event of an injunction. See Playmakers LLC v. ESPN, Inc., 376 F.3d 894, 898 (9th Cir. 2004) (significant financial investment would be lost if injunction were to issue).  Finally, an injunction would also diminish Guvera's goodwill and publicity.  See Opp. to MPI (Doc. 31) at 21.  Accordingly, the balance of the hardships by no means tips sharply toward Plaintiffs.

### 3.    Irreparable Harm

Plaintiffs urge that "irreparable injury may be presumed from a showing of likelihood of success on the merits."  See MPI (Doc. 15) at 13 (citing Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009)).  Here, because the Court concludes that Plaintiffs are not likely to succeed on the merits, irreparable injury cannot be presumed.  Having said that, loss of control over reputation and loss of goodwill are standard bases for irreparable harm, See, e.g., Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597 (9th Cir. 1991).  Plaintiffs argue compellingly that "Groovera stands to lose valuable goodwill by virtue of the association in consumers' minds with a heavily commercialized venture," and add that "Groovera prides itself on operating independently, free of commercial interruption or subscription and without any corporate sponsorship."  MPI (Doc. 15) at 14.  Accordingly, this element has been met.

### 4.    Public Interest

Plaintiffs argue that "[w]hen consumers are being led to believe there is a relationship between Plaintiffs and Defendants, when in reality none exists, and consumers are at risk of being defrauded, the public interest militates against allowing Defendants to continue to confuse consumers in this fashion."  MPI (Doc. 15) at 15 (citing United States Olympic Comm., 2009 U.S. Dist. LEXIS 12698, at *26).  This rather overstates what is at stake in this case: Plaintiffs' allegation is simply one of confusion.  Nonetheless, Defendants did not dispute this element, and the Court finds that this element has been met.

---

[3] Guvera's argument that it does not have numerous alternative names to choose from that would conjure up the name of Che Guevara, the company's revolutionary icon, is a weaker point.  See id.

18

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5.    **Conclusion as to Preliminary Injunction**

"Serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the <u>Winter</u> test are also met." <u>Alliance for the Wild Rockies</u>, 622 F.3d at 1052.  Here, while "the other two elements of the <u>Winter</u> test" have probably been met, Plaintiffs have not raised serious questions or demonstrated that the balance of the hardships tips sharply in their favor.

The Motion for Preliminary Injunction is therefore DENIED.

D.    **Motion to Strike**

Finally, Plaintiffs move to strike in its entirety the Declaration of Ted Cohen, Defendants' online music industry expert, for inclusion of legal opinions and conclusions in violation of Rules 702 and 704 of the Federal Rules of Evidence.  Motion to Strike (Doc. 50) at 5-6.  Experts are generally barred from giving testimony on legal conclusions.  <u>See Aguilar v. Int'l Longshoremen's Union</u>, 966 F.2d 443, 447 (9th Cir. 1992).  While Mr. Cohen's Declaration is organized in part around four of the <u>Sleekcraft</u> factors, the declaration uses these as categories for commentary on consumer habits, the nature of the online music, etc., based on Mr. Cohen's experience in the online music industry.  <u>See generally</u> Cohen Decl. (Doc. 33).  In addition, the Court's ruling does not depend on the Cohen Declaration. Accordingly, Plaintiffs have not met their burden to prove the entire declaration should be excluded.

The Motion to Strike is DENIED.

III.    **CONCLUSION**

For the foregoing reasons, the Court: (A) DENIES the Motion to Dismiss for Personal Jurisdiction as to Guvera USA; (B) GRANTS the Motion to Dismiss for Personal Jurisdiction as to Guvera IP[4]; (C) DENIES the Motion to Dismiss for Failure to State a Claim; (D) DENIES the Motion to Transfer; (E) DENIES the Motion for Preliminary

//

//

---

[4] If, in the course of discovery with the remaining parties, Plaintiffs become aware of new jurisdictional facts, they may ask the Court to reconsider its dismissal on this basis.

Injunction; and (F) DENIES the Motion to Strike.

**IT IS SO ORDERED.**

Dated: December 20, 2010

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE